UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

MARCUS THOMAS

CRIMINAL ACTION NO.

1:22-CR-0453-SEG-RGV

## **O R D E R**

On December 20, 2022, a grand jury returned an indictment charging Marcus Thomas with one count of possession of a firearm and ammunition by a convicted felon[1] in violation of 18 U.S.C. § 922(g)(1). Mr. Thomas moves to dismiss the indictment on the ground that § 922(g)(1) violates the Second Amendment under the test for assessing the constitutionality of firearms regulations set forth in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S. 1 (2022). (Doc. 22.) He further moves to dismiss the indictment due to alleged spoliation of evidence. (Doc. 24.) Mr. Thomas also filed motions to

---

[1] It is alleged that Mr. Thomas possessed a firearm and ammunition knowing that he had been previously convicted of at least one of the following offenses: (1) aggravated assault; (2) terroristic threats or acts and possession of cocaine; (3) possession of cocaine; and (4) theft by receiving stolen property. (Doc. 3.)

suppress (1) evidence seized pursuant to a search warrant (Doc. 23) and (2) in-court and out-of-court identifications by a government witness (Doc. 73).

The Magistrate Judge recommends that Defendant's pretrial motions be denied.  (Doc. 86.)  Mr. Thomas filed objections to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. 90, 91); the Government filed responses (Doc. 92, 93); and Defendant filed a reply brief (Doc. 97).[2]  Evaluation of the sizeable pretrial record in this case has required review of approximately 850 pages of briefing and exhibits plus consideration of evidence adduced at the hearing before the Magistrate Judge.  After careful consideration, the Court enters the following order.

## I.     Legal Standard

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which a defendant has timely and specifically objected.  The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667 (1980).  For a party's objections to warrant de novo review, he "must clearly advise the

---

[2] Defendant filed his reply brief on April 16, 2024.  (Doc. 96.)  On April 17, 2024, he filed an amended reply brief.  (Doc. 97.)  The Court considers the arguments in the amended reply brief.

district court and pinpoint the specific findings that [he] disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). Matters as to which no objections are raised will be assessed for clear error. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) ("[I]ssues upon which no specific objections are raised do not so require de novo review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

## II.    Discussion

### A. Defendant's Motion to Dismiss the Indictment on the Ground that 18 U.S.C. § 922(g)(1) Violates the Second Amendment

The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 635-36 (2008), the Supreme Court held that law-abiding citizens have a Second Amendment right to possess handguns in the home for self-defense. The Supreme Court stated, however, that the Second Amendment right "is not unlimited[,]" and "nothing in [the *Heller*] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]" *Id.*

3

at 626.  To the contrary, the Court in *Heller* "labeled [such] federal regulations 'presumptively lawful.'"  *United States v. Dubois*, 94 F.4th 1284, 1291 (11th Cir. 2024) (quoting *Heller*, 554 U.S. at 627 n.26)).

Fourteen years after *Heller* came *Bruen*.  At issue in *Bruen* was a law regulating an individual's ability lawfully to carry a firearm outside the home; it concerned the Second Amendment rights of "law-abiding, responsible citizens." *Bruen*, 597 U.S. at 26, 70.  In *Bruen*, the Supreme Court clarified the analytical framework applicable to Second Amendment challenges.  Under that framework, a court must first decide if the text of the Second Amendment applies to a person and his proposed conduct.  If it does, the Government "must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19.

Mr. Thomas argues that 18 U.S.C. § 922(g)(1) violates the Second Amendment as analyzed under *Bruen* because (1) the plain text of the Second Amendment covers his charged conduct; and (2) the Government fails to meet its burden of showing that preventing persons convicted of felonies from possessing firearms comports with this nation's tradition of firearm regulation.

In a thorough and thoughtful R&R, the Magistrate Judge determined that binding Eleventh Circuit precedent forecloses Mr. Thomas's argument

4

that § 922(g)(1) violates the Second Amendment.  (Doc. 86 at 10.)  Specifically, the Magistrate Judge found that Defendant's constitutional challenge is foreclosed by *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), in which the Eleventh Circuit rejected a Second Amendment challenge to § 922(g)(1) and held that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment."  *Id*. at 771. As to Defendant's argument that *Rozier* was abrogated by *Bruen*, the R&R explained why no such abrogation had occurred.  (Doc. 86 at 11-12.)  Finally, the R&R found that even if it was not bound by *Rozier*, the Government offered evidence that § 922(g)(1) is part of the historical tradition of the Second Amendment.  (*Id.* at 12 n. 6.)

One week after the issuance of the R&R in this case, the Eleventh Circuit in *United States v. Dubois,* 94 F.4th 1284 (11th Cir. 2024), expressly concluded that "*Bruen* did not abrogate *Rozier*."  *Id*. at 1293.  It further held that:

> [b]ecause the Supreme Court "made it clear in *Heller* that [its] holding did not cast doubt" on felon-in-possession prohibitions, . . . and because the Court made it clear in *Bruen* that its holding was "[i]n keeping with *Heller*," 142 S. Ct. at 2126, *Bruen* could not have clearly abrogated our precedent upholding section 922(g)(1). . . Indeed, the *Bruen* majority did not mention felons or section 922(g)(1).

*Id*. (citations omitted).

5

Mr. Thomas objects that (1) *Rozier* does not apply here (Doc. 91 at 2-9); and (2) the Government has failed to show that § 922(g)(1) is "part of the historical tradition" (*id.* at 10-19). As for the first objection, Mr. Thomas contends that while both *Rozier* and this case concern whether § 922(g)(1) violates the Second Amendment, *Rozier* did not address the issue presented in this case. As for *how* the two cases differ, Defendant states:

> In *Rozier*, the defendant presented the issue of whether the Second Amendment protected his activity because he possessed a gun for self-defense purposes in the home. *Rozier*, 598 F.3d at 770. Here, however, Mr. Thomas raises a different issue: whether the Second Amendment protects his activity because prohibiting felons from possessing firearms violates the plain text of the Second Amendment and whether it is "part of the historical tradition."

(Doc. 91 at 6; *see also* Doc. 22 at 14-15.) The Court fails to see how the central issue raised here – whether § 922(g)(1) violates the Second Amendment – is in any material respect a "different issue" than the one presented in *Rozier*. *Rozier* upheld § 922(g)(1) "on the threshold ground that felons are categorically 'disqualified' from exercising their Second Amendment right under *Heller*." *Dubois*, 94 F.4th at 1293 (citing *Rozier*, 598 F.3d at 770-71). Defendant's argument that § 922(g)(1)'s prohibition violates "the plain text of the Second Amendment" is thus irreconcilable with *Rozier*'s core holding. And despite Mr. Thomas's repeated insistence that "*Rozier* has been undermined to the point of

abrogation by *Bruen*[,]" (Doc. 91 at 7, 10), the Eleventh Circuit has held just the opposite. *Dubois*, 94 F.4th at 1293 ("*Bruen* did not abrogate *Rozier*.").

The Court further overrules Defendant's related objection that the R&R "ignored the principle of party presentation" by "failing to recognize" that the Government conceded Defendant's "second independent argument" as to why *Rozier* does not apply here. (Doc. 91 at 2.)  As an initial matter, the Court does not consider that the Government has made such a concession because Defendant's "first independent argument" and "second independent argument" are two ways of making the same (or at least an exceedingly similar) point.[3] Second, even assuming a concession, while "[t]he party presentation principle is a real limit on the ability of American courts to consider issues not presented by the parties[,]" *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022), the Court is not required to accept a party's concession on a question of law.[4] Here, the Court concludes as a matter of law that *Rozier* and *Dubois* are

---

[3] Defendant's "first independent argument" is that "neither text nor history plays a role in *Rozier's* Second Amendment test[,]" so *Bruen* abrogates *Rozier*. The "second independent argument" (paraphrased) is that *Rozier* did not rule on his "plain language" or "historical tradition" arguments.

[4] *See United States v. Lee*, 586 F.3d 859, 866 (11th Cir. 2009) (finding that the Government's concession on a question of law was not dispositive); *see also Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 547 n.6 (11th Cir. 2019) ("the Government cannot concede away the proper interpretation of a statute.").

binding on this Court and foreclose Mr. Thomas's Second Amendment argument. *Dubois*, 94 F.4th at 1293 ("Because *Rozier* binds us, [defendant's] challenge based on the Second Amendment necessarily fails."); *United States v. Rivera*, No. 4:23-CR-00005-WMR-WEJ, 2024 WL 1095745, at *2 (N.D. Ga. Mar. 12, 2024) (citing to *Dubois* and concluding that "*Rozier* remains binding on this Court, and § 922(g)(1) is therefore constitutional under the Second Amendment.").

Turning to Defendant's next objection, Mr. Thomas critiques the R&R for its abbreviated treatment of the historical evidence proffered by the Government. As he acknowledges, however, the R&R's historical tradition discussion "was not the central holding of the R&R" and "the R&R recommends denying Mr. Thomas's motion to dismiss because of *Rozier*." (Doc. 91 at 11.)

Mr. Thomas has responded in detail to the Government's historical-record presentation and has argued that some of the Government's proffered case law and evidence lacks probative value and/or relies on secondary sources that themselves overstate the historical record in the Government's favor. (Doc. 32 at 8-26; Doc. 91 at 10-19.) He also observes that not all post-*Bruen* decisions on § 922(g) are trending in the Government's favor. While the latter observation is true, at least when it comes to firearms prohibitions on persons

convicted of certain nonviolent offenses,[5] Mr. Thomas's objection does not cite authority that persuasively calls into question the constitutionality of § 922(g)(1) as it applies to him. *Range v. Attorney General*, cited by both parties and discussed in the R&R, involved an as-applied challenge in a civil matter on behalf of a plaintiff who had a nearly three-decade-old misdemeanor conviction for making false statements to obtain food stamps. *Range*, 69 F.4th 96, 98-99 (3d Cir. 2023).   On those facts, the Third Circuit found § 922(g)(1) unconstitutional but noted that the decision was "a narrow one" as plaintiff "challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of [the misdemeanor false statements law]."  *Id.* at 106. Here, in contrast, Mr. Thomas is alleged to have possessed a firearm, knowing that he was previously convicted of aggravated assault and terroristic threats, among other offenses.

Even if *Rozier* and *Dubois* did not foreclose dismissal here, the Court would not dismiss the indictment under the historical tradition analysis. There is ample evidence of a historical tradition of disarming groups of persons perceived to be dangerous.  England's Militia Act of 1662 empowered officers

---

[5] *See, e.g.*, *United States v. Duarte*, No. 22-50048, ___ F.4th ___, 2024 WL 2068016 (9th Cir. May 9, 2024); *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023).

of the Crown to disarm persons considered "dangerous to the Peace of the Kingdom." 14 Car. 2, c. 3, § 13 (1662). *Bruen* "recognized that various colonial-era and antebellum laws restricted the rights of 'Affrayers, Rioters, Disturbers, or Breakers of the Peace' to bear arms." *United States v. Childs*, No. 122CR00327LMM, 2023 WL 6845830, at *4 (N.D. Ga. Oct. 16, 2023) (quoting *Bruen*, 597 U.S. at 46, 49). Justice Barrett, while on the Seventh Circuit Court of Appeals, wrote that "English and early American restrictions on arms possession" were "animated" by "[c]oncerns about "threatened violence and the risk of public injury." *Kanter v. Barr*, 919 F.3d 437, 451, 456 (7th Cir. 2019) (Barrett, J., dissenting), *abrogated by Bruen*, 597 U.S. 1 (2022) ("History is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns."). Late-18th-century and early 19th-century statutes "prohibit[ed] bearing arms in a way that spread[] 'fear' or 'terror' among the people." *Bruen*, 597 U.S. at 50. *Bruen* itself refers to the right of "law-abiding, responsible citizens" to use arms for self-defense. *Id.* at 26, 70.

A number of other, thoughtfully considered cases discuss the historical sources showing that restrictions on firearms possession by persons convicted of certain criminal offenses are consistent with this nation's tradition of firearms regulation. *See, e.g., United States v. Jackson*, 69 F.4th 495 (8th Cir.

2023); *Medina v. Whitaker*, 913 F.3d 152 (D.C. Cir. 2019); *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010); *Childs*, 2023 WL 6845830, at *4; *see also United States v. Gonzalez*, No. 22-1242, 2022 WL 4376074, at *2 (7th Cir. Sept. 22, 2022) ("Gonzalez's offense . . . was violent, and we are aware of no authority supporting an argument that someone in his position historically had the right to possess a gun.").  Even if Mr. Thomas's Second Amendment challenge was not foreclosed by *Dubois* and *Rozier*, his motion to dismiss would not succeed. Mr. Thomas's objections are overruled, and the motion to dismiss the indictment on Second Amendment grounds is denied.

### B. Defendant's Motion to Dismiss the Indictment Based on Spoliation of Evidence

#### 1. Background

On July 1, 2022, Officer Jarvis Farley and Sergeant Redmond Keeney of the Atlanta Police Department responded to a call of shots fired at a Travel Inn motel at 2788 Forest Hills Drive SW, Atlanta, Georgia.  Officer Farley spoke with the clerk in the motel office who informed him that the shots came from Room 356.  After clearing the area, Officer Farley and Sergeant Keeney went to Room 356 and knocked on the door.  After Mr. Thomas opened the door, officers handcuffed him and placed him in a chair.

Before submitting his affidavit in support of a search warrant, Officer Farley went to the motel office to view the motel's surveillance video. At the evidentiary hearing, Officer Farley testified that the video "shows a guy coming out of a room, a light-skinned guy with no shirt on and jeans." (Tr. at 86.) Officer Farley testified that he could tell that the man was holding something but given the rainy conditions and "foggy" nature of the camera footage, he could not tell whether the person was holding a gun. (*Id*.) The video purportedly showed the man go back into the room, followed by "two bursts of the glass outward." (*Id*.) Officer Farley testified that this video, in conjunction with witness statements, left him with "no doubt that [they] had the right person." (*Id*. at 131.)

After arriving on the scene, Special Agent Ashley Piorkowski of the Federal Bureau of Investigation ("FBI") also viewed the surveillance video. At the evidentiary hearing, she testified that the appearance of the man in the surveillance video was consistent with Defendant's appearance. (*Id*. at 26.)

The surveillance video was not collected by officers and the motel subsequently recorded over the video. Officer Farley testified that he thought the video was being preserved by his body camera, which he believed was recording the surveillance video as he watched it. (*Id*. at 87.) But the battery

in his body camera died before he viewed the video, so it failed to record the surveillance video. (*Id*. at 82, 89–90.)

## 2. Discussion

Mr. Thomas moves to dismiss the indictment on the ground that law enforcement officers' failure to preserve the surveillance video deprived him of his constitutional right to prepare a defense. (Doc. 24.) He posits that the video could have contained "potentially useful" evidence and might, among other things, have "identif[ied] someone other than Mr. Thomas who was in the vicinity of the relevant shooting." (*Id*. at 1; Doc. 78, Doc. 90; Doc. 97.)

To establish a due process violation based on the loss or destruction of evidence, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006). "The loss of evidence by the government is a denial of due process only when the defendant shows that 'the evidence was likely to significantly contribute to his defense.'" *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011) (quoting *Revolorio–Ramo,* 468 F.3d at 774).

After receiving the parties' initial briefing, conducting an evidentiary hearing, and receiving post-hearing briefing, the Magistrate Judge found that

the Government's failure to preserve the video did not deprive Mr. Thomas of due process.  Specifically, he determined that Mr. Thomas (1) failed to establish that the video had exculpatory value that was apparent before it was destroyed,[6] and (2) failed to show Officer Farley's bad faith.

Mr. Thomas objects to the Magistrate Judge's finding that Officer Farley did not act in bad faith in connection with the loss of the surveillance footage. He asserts that Officer Farley "lied repeatedly on the witness stand" in relation to his failure to preserve the video.  (Doc. 90 at 6-7.)  He further contends that Officer Farley's testimony shows that Farley knew that his body camera battery had died *before* he viewed the surveillance video, so his alleged reason for failing to collect a copy of the video – that he thought it was recorded by his body camera – was untruthful.  Mr. Thomas further objects that the Magistrate Judge "uncritically accepted Farley's self-serving" statement that his failure to retrieve the surveillance video was due to a "mental lapse" and "uncritically accepts Farley's characterization that it was a very intense scene."  (Doc. 90 at 11, 13) (internal quotation omitted).

Because the video is not clearly exculpatory, Mr. Thomas must show that law enforcement acted in bad faith by not preserving the video. *Lanzon*, 639

---

[6] Mr. Thomas characterizes the video as "potentially useful" rather than exculpatory.  (Doc. 90 at 6; Doc. 97 at 1, 10.)

F.3d at 1300; *see also Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) ("[T]he failure to preserve [ ] 'potentially useful evidence' does not violate due process 'unless a criminal defendant can show bad faith on the part of the police.'") (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)) (emphasis omitted). Bad faith exists in "those cases in which the police themselves by their conduct indicate that the [unpreserved] evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58; *see also Revolorio-Ramo*, 468 F.3d at 775 (stating that the government's conduct must reach the level of "an intentional bad faith act."). "Speculation" as to a law enforcement officer's motive cannot support a claim that an officer acted bad faith. *See United States v. Wilchcombe,* 838 F.3d 1179, 1192 (11th Cir. 2016).

The R&R found no bad faith, but it did not do so "uncritically." (Doc. 90 at 11.) It recited the factual background at length, discussed Officer Farley's testimony, and made pertinent credibility findings. The R&R ultimately concluded that "[a]t worst, the failure to retrieve the video could be described as negligent, and mere negligence in failing to preserve evidence is inadequate to show bad faith." (Doc. 86 at 22) (internal quotation omitted). The Court finds no error here. Mr. Thomas identifies potential inconsistencies in Officer Farley's testimony as to when he learned that his body camera's battery died. But his conclusion that those purported inconsistencies add up to a showing

15

that Officer Farley lied or otherwise acted in bad faith is ultimately speculative.  The Magistrate Judge, who "heard all of the testimony" and "was in a position to make credibility determinations," *United States v. Watkins*, 13 F.4th 1202, 1212 (11th Cir. 2021), reasonably credited Farley's statements that "a lot happened that day," that the scene was "intense," and that Farley's failure to preserve the video was due to a "mental lapse."  And while Mr. Thomas states that the R&R "uncritically" accepted Officer Farley's characterization of the scene as "very intense" (*id.* at 90), there is no dispute that the incident involved a shooting.  And the body camera footage – showing officers, with guns drawn, inching with trepidation toward the room in question – further supports Officer Farley's characterization of the scene that day.  The fact that Officer Farley at one point "recline[d] along the balcony railing for about 8 minutes" does not meaningfully undermine his testimony that "a lot happened that day" or that the scene was "intense."  Having reviewed the record, the Court finds that the R&R reasonably concluded that law enforcement officers' failure to preserve the video was, at worst, negligent.[7]

---

[7] *See, e.g., United States v. Aguirre-Cuenca*, No. 21-4307, 2023 WL 245710 at *3 (4th Cir. 2023) (finding no clear error in the district court's factual determination that the officer did not act in bad faith by failing to activate his body camera, even though this failure violated department policy); *Durr v. Slator*, 558 F. Supp. 3d 1, 36 (N.D.N.Y. 2021) (internal quotation omitted) ("police officers' failure to activate body-worn cameras alone does not constitute

There is, moreover, no evidence that Officer Farley allowed the surveillance video to be destroyed with knowledge that the video was exculpatory or potentially useful. *United States v. Addaquay*, No. 1:20-CR-0045-LMM-JSA, 2022 WL 1514663, at *3 (N.D. Ga. Feb. 28, 2022), *report and recommendation adopted*, 2022 WL 1284819 (N.D. Ga. Apr. 28, 2022) (finding no bad faith where there was "no evidence to suggest that any investigator contemplated the evidentiary significance of the [deleted] footage"); *see also Youngblood*, 488 U.S. 51, 56 n*. ("The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."). Officer Farley testified that the video supported his belief that Mr. Thomas was the person who had a firearm in Room 356. (Tr. at 131.) Agent Piorkowski, who also viewed the surveillance video, reached the same

---

a due process violation"); *United States v. Taylor*, 312 F. Supp. 3d 170, 178 (D.D.C. 2018) ("[Defendant's] sole contention is that Officer Logan and others should have taken affirmative steps to preserve additional evidence. Under these circumstances, the Court concludes that his failure to activate his body-worn camera does not constitute prima facie evidence of bad faith in failing to collect and preserve additional evidence."); *United States v. Brown*, No. 2:17-CR-58, 2017 WL 8941247, *15 (D. Nev. Aug. 14, 2017) ("The Court agrees that [the officers] did not activate or re-activate their B[ody] W[orn] C[amera]s in strict accordance with Metro policies and procedures. Even so, this is more indicative of negligence than bad faith.").

conclusion, testifying that Mr. Thomas was the man she saw on the video who entered the hotel room from which gunshots were fired.  (*Id.* at 26.)  The testimony provided by Agent Piorkowski – who is *not* alleged by Mr. Thomas to have acted in bad faith – undermines Defendant's argument that the video was potentially useful to him.

Next, Mr. Thomas objects that the Magistrate Judge failed to address Officer Farley's "degree of fault . . . and whether such fault warrants alternative sanctions."  (Doc. 90 at 15.)  As to the degree of fault, the R&R found that "at worst[,]" the failure to retrieve the video "could be described as negligent[.]"  (Doc. 86 at 22.)  As to sanctions, the Eleventh Circuit has recognized the availability of spoliation sanctions if a party fails to preserve evidence in the civil context.  *See Flury v. Daimler Chrysler Corp.,* 427 F.3d 939, 943–44 (11th Cir. 2005), *superseded by rule, Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023).  But the Eleventh Circuit has "not recognized the spoliation doctrine in the criminal context."  *Lanzon*, 639 F. 3d at 1302.  And where it has considered applying a lesser sanction, such as a spoliation instruction, in the criminal context, it has required a finding that the evidence was material to the defense and that the Government acted in bad faith.  *See United States v. Fey*, 89 F. 4th 903, 914 (11th Cir. 2023); *Lanzon*, 639 F.3d at 1302.  Mr. Thomas has failed to establish that law enforcement

18

officers acted in bad faith. An alternative "sanction" would thus be inappropriate, and the Magistrate Judge did not err by declining to recommend one.[8] The objections are overruled.

### C. Defendant's Motion to Suppress Evidence

#### 1. Background

After Mr. Thomas opened the door to Room 356, he was handcuffed and placed in a chair outside the room. Officer Farley remained with Mr. Thomas while Sergeant Keeney and Officer Cadell Stevens entered the room. During a protective sweep, Sergeant Keeney and Officer Stevens saw several items in plain view, including a gun magazine and live ammunition.[9] After they

---

[8] Mr. Thomas presented the spoliation issue in the context of a motion to dismiss. Nothing in this order prevents Mr. Thomas from filing an appropriate motion in limine seeking limitations on testimony about the video at trial.

[9] The Magistrate Judge states that shell casings were found in plain view during the protective sweep. (Doc. 86 at 4.) Mr. Thomas objects that this factual finding is inaccurate. "The Government agrees with Defendant that the spent shell casings from Defendant's firearm were not seen in plain view during Sergeant Keeney's and Officer Stevens' protective sweep (or their brief search) of the motel room but were only found when officers executed the search warrant." (Doc. 92 at 22.) The footage from Sergeant Keeney's body camera during the protective sweep supports Defendant's position that live ammunition rounds were in plain view, not spent shell casings. (Doc. 71-11, Dft. Ex. B.2, Nov. 1, 2023, Evid. Hrg.) Testimony from Officer Farley at the evidentiary hearing also supports a finding that two live ammunition rounds were in plain view. (Tr. at 93.) The Court sustains Defendant's objection but finds that this factual error was harmless and has no impact on the Court's determination of the admissibility of the shell casings.

determined that no one else was present in the room, they began to search the room, "looking in the back of the toilet, dresser drawers, nightstand drawers, the microwave, inside and behind a mini fridge, behind the ironing board, under the bathroom sink, behind the chair, behind the dresser, inside the air conditioning unit, and behind the headboard of each bed, but they did not locate a firearm or seize any items observed in the room." (Doc. 86 at 4.)   The officers then sought a search warrant.  Sergeant Keeney told Officer Farley about the items that were found in plain view in the motel room but did not mention that he and Officer Stevens had conducted the search described above. Officer Farley then watched the motel surveillance video and prepared an affidavit in support of a search warrant that was submitted to a state court magistrate judge.  Because Officer Farley was unaware of Sergeant Keeney's and Officer Stevens's search, his affidavit did not mention it.

The search warrant was approved a few hours after the protective sweep occurred.  Officers then searched the room and collected the gun magazine, two live ammunition rounds, and shell casings.  No firearm was found.[10]

---

[10] The firearm was discovered by the motel's housekeeper on July 4, 2022, three days after the search.  Officers then retrieved the firearm from the motel.

## 2. Discussion

Mr. Thomas seeks to suppress the evidence found in the motel room (*i.e.*, a gun magazine, spent shell casings, and two live rounds of ammunition) because he contends that the search conducted pursuant to the warrant was tainted by the brief, unwarranted search that preceded it.  The Magistrate Judge recommends denying the motion to suppress because (1) "[b]ased on the totality of the facts known to the officers at the time of entry into room 356, it is clear that exigent circumstances justified the warrantless entry and protective sweep of the motel room" (Doc. 86 at 28)[11] and (2) Defendant fails to make a substantial preliminary showing, as required by *Franks v. Delaware*, 438 U.S. 154 (1978),[12] that material information was intentionally and/or recklessly omitted from the affidavit submitted in support of the search warrant, nor has Defendant shown that the alleged omissions undermined the probable cause that was set forth in the warrant affidavit (Doc. 86 at 35).

_____

[11] It was during the protective sweep of the motel room that the police officers saw, in plain view, a gun magazine in the bathroom and live ammunition on the floor.

[12] "The Supreme Court made it clear in *Franks* that in order to be entitled to relief a defendant must show not only that misrepresentations or omissions were intentionally or recklessly made, but also that, absent those misrepresentations or omissions, probable cause would have been lacking." *United States v. Novaton*, 271 F.3d 968, 987 (11th Cir. 2001).

Mr. Thomas objects, arguing that because officers conducted an initial, warrantless search of the motel room that failed to yield a firearm, then probable cause justifying any further search of the room had dissipated.  He contends that if the magistrate judge who issued the search warrant had been apprised of the initial search, that judge would not have issued a search warrant "to search in the exact same places a second time."  (Doc. 90 at 19.)

The Court does not agree.  The affidavit in support of the search warrant states as follows:

> I, Officer Farley, of the Atlanta Police Department I am a POST certified police officer in the state of Georgia. At the Travel Inn Motel, 2788 Forrest Hills Drive SW, room #356, I was called out to the location via 911 in regards to shots fired from a room. The shots were said to have been fired from room 356. Witness 1, the housekeeper, stated she seen a black male holding a weapon in his hand after exiting room 356 and advised hearing a gunshot being fired from the room. Witness 2 stated he seen a black-male exiting room 356 holding a firearm handgun in his hands. Witness 2 stated he went back inside of room 354, and immediately heard a gunshot fired from the neighboring room,

> As officers approached room 356, two defects to the window of room 356 was seen. The room has only two windows which are positioned adjacent to the door.

> After officers arrived on scene and knocked at door 356, the male identified by witnesses open the door, complied with all verbal commands and was detained without incident.

> The accused opened the door upon a knock from police. The accused was detained. In the process of clearlng the room to make sure no victim was found inside, a long firearm magazine with two

> (2) live rounds were found in the bathroom on the floor in plain
> view. The magazine was silver in color. After searching the accused
> incident to arrest no weapon was located on his person. It is a
> reasonable suspicion to believe the firearm is inside the room.

(Doc. 69-10 at 3, Gov. Ex. 17, Nov. 1, 2023, Evid. Hrg.)  The information in

Officer Farley's affidavit is sufficient to establish probable cause to believe that

the firearm, which was not recovered during the brief, warrantless search, was

still in the motel room.  The facts alleged in the affidavit include the following:

(1) a call was made to the police that shots were fired from a motel room, (2)

witnesses saw a person holding a firearm leaving Room 356, (3) a witness

heard a gunshot being fired from Room 356, (4) the window to Room 356 had

two defects that appeared to be made by bullets, and (5) a gun magazine and

two live rounds were found in plain view in Room 356.

Given the facts listed above, the omission from the affidavit of the fact

that the four-minute,[13] warrantless search of the room did not yield a firearm

does not vitiate the existence of probable cause supporting the search warrant.

While many areas of the room were searched following the protective sweep,

the search was not comprehensive, as evidenced by the alleged fact that the

firearm eventually was found in the bed.  The Court agrees with the Magistrate

Judge that "[n]one of the claimed omitted information on its face is so clearly

---

[13] (Doc. 71-11, Dft. Ex. B.2, Nov. 1, 2023, Evid. Hrg.)

critical to the probable cause determination that its omission created a presumption of recklessness." (Doc. 86 at 35) (quoting *United States v. Bivins*, 560 F. App'x 899, 906) (11th Cir. 2014) (per curiam).

A case cited by Mr. Thomas in support of his *Franks* argument – *United States v. Bowling*, 900 F.2d 926 (6th Cir. 1990) – underscores this point. In that case, the defendants sought to suppress the findings of a search of their trailer after officers obtained a warrant without disclosing that they had previously conducted a fruitless, warrantless search. *Id.* at 929. The district court denied the motion to suppress, and the Sixth Circuit affirmed, finding that even if the neutral magistrate had been advised of the initial, fruitless search, probable cause would have remained for the second search. *Id.* The Sixth Circuit explained that although the prior search "spanned every room [of the defendants' trailer] and was detailed at points, it was not overall as intricate as the search under the warrant. This is evidenced by the fact that it lasted only fifteen minutes or so." *Id.* The Sixth Circuit held that denial of suppression was further supported by the fact that "a principal incriminating item" had not been found in the first search and was in an area that had not been previously searched. *Id.* Here, as in *Bowling*, the initial, warrantless search was less comprehensive than the subsequent search. And a "principal incriminating item" – the firearm – was not found in the first search.

24

As the R&R stated:

> Although the government has not established any lawful basis for the search conducted by Sergeant Keeney and Officer Stevens after the protective sweep was completed, and their conduct is not sanctioned in any way by this ruling, it does not impact the admissibility of the evidence . . .

(Doc. 86 at 33 n. 18.)   This Court agrees.   Mr. Thomas has not made a substantial preliminary showing that material information was intentionally or recklessly omitted from the officer's affidavit; nor has he made a showing that such alleged omissions undermined the probable cause otherwise set forth in the affidavit necessary for a *Franks* hearing to be held.   Mr. Thomas's objection is overruled, and the motion to suppress evidence obtained during the search of the motel room is denied.

### D. Defendant's Motion to Suppress In-Court and Out-of-Court Witness Identifications

After officers arrested Mr. Thomas but before they removed him from the motel, Officer Farley brought Witness 1, the motel housekeeper, to see Mr. Thomas, at which point Witness 1 identified Defendant as the man who had a handgun in Room 356.   After the evidentiary hearing, Defendant filed a motion to suppress the out-of-court identification of Defendant by Witness 1 on the date of the incident, as well as any future in-court identifications that might be made by Witness 1. He argues that the show-up was "unduly suggestive"

because Defendant was handcuffed, situated next to a police car, standing with a police officer, and no other potential suspects were nearby.  (Doc. 78 at 22.)

The Magistrate Judge determined that even if the show-up was unduly suggestive, there was sufficient evidence to indicate that Witness 1's identification of Defendant was reliable.  The Magistrate Judge points to (1) evidence that Witness 1 had seen Defendant in front of Room 356 with a gun for two days in a row prior to the incident, leading her to pay close attention to him; (2)  evidence that Witness 1 had sufficient opportunity to view Defendant prior to the incident because she was cleaning a nearby room and had walked by Room 356 several times, at which point she saw the same man she had seen before pacing with a gun in front of Room 356; and (3) evidence that Witness 1 accurately described Defendant, including the clothes he was wearing on the day of the incident, before the show-up.  (Doc. 86 at 40-43.)

Defendant does not object to the Magistrate Judge's findings.  The Court has reviewed the Magistrate Judge's analysis and agrees that this evidence, in addition to fact that the identification occurred shortly after the shooting and Witness 1 demonstrated a high level of certainty that Defendant was the individual that she had seen on several occasions in front of Room 356 holding a firearm, supports a finding that Witness 1's identification of Defendant was reliable and should not be suppressed.

## III.  Conclusion

For the reasons explained above, the Court ADOPTS the Magistrate Judge's R&R.  (Doc. 86.)  Defendant's motions to dismiss the indictment (Doc. 22, 24), to suppress evidence (Doc. 23), and to suppress in-court and out-of-court identification (Doc. 73) are DENIED.

**SO ORDERED** this 25th day of May, 2024.

_____
SARAH E. GERAGHTY
United States District Judge